Elliot J. Rosner, Esq. (ER 6281)
SNITOW KANFER HOLTZER & MILLUS, LLP
575 Lexington Avenue, 14th Floor
New York, New York  10022-6102
Tel No. (212) 317-8500
Fax No. (212) 317-1308
erosner@skhmlaw.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

———————————————————— X

ROYAL WINE CORPORATION,

                            Plaintiff,           :      Civil Action No.

                                        :

   - against -                   :

ANSON IMPORTS LTD. CO.,          :      **COMPLAINT**

                                        :

                     Defendant.

———————————————————— X

Plaintiff, ROYAL WINE CORPORATION ("Royal"), by and through its undersigned counsel, Elliot J. Rosner, Esq., of Snitow Kanfer Holtzer & Millus LLP, as and for its Complaint against defendant, ANSON IMPORTS LTD. CO. ("AnSon"), alleges as follows:

**INTRODUCTION**

1.     This is an action for breach of contract and breach of the implied covenant of good faith and fair dealing based upon the acts of defendant AnSon in contravention of a certain Distributor Agreement dated May 1, 2009 ("Distributor Agreement" or "Agreement") between AnSon, as supplier, and Royal, as distributor

(collectively, the "parties").

## PARTIES

2.     Plaintiff Royal is a corporation duly organized and existing under the laws of the State of New York, and also authorized to conduct business in the State of New Jersey, with its principal place of business located at 63 LeFante Way, Bayonne, New Jersey 07002.  Royal is engaged in business as a producer, importer and a leading distributor of upscale wines, liquors, spirits and grape juices.

3.     Upon information and belief, defendant AnSon is a limited liability company duly organized and existing under the laws of the State of Florida, with its principal place of business located at 11943 N.W. 37th Street, Coral Springs, Florida 33065, and with a business office located at 16711 Collins Avenue, North Miami Beach, Florida 33160.  Upon further information and belief, AnSon is engaged in business as an importer of Russian vodka.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this action pursuant to 28 U. S. C. §1332.

5.     Venue is proper in the United States District Court for the District of New Jersey pursuant to 28 U.S.C. Section 1391(a)(1) and (2), respectively, pursuant to the forum selection clause in the parties' Agreement designating the United States District Court for the District of New Jersey as the exclusive venue for any action arising out of the Agreement in this District.

2

## FACTUAL BACKGROUND

6.    On or about May 1, 2009, Royal and AnSon entered into a certain Distributor Agreement (the "Agreement"), providing for Royal's exclusive distributorship in the State of New York of a product known as Ruskova Genuine Russian Vodka ("Ruskova"), supplied by AnSon.  A copy of the Agreement is annexed hereto as Exhibit "A."

7.    The Agreement provided for an initial three-year term from May 1, 2009 through April 30, 2012.  The Agreement also contained an option for an automatic extension of the Agreement for an additional three-year term if neither party was in default or gave the other party notice of intent not to renew at least 120 days prior to the end of the initial term.

8.    The Agreement requires Royal to purchase from AnSon, during the initial three-year term, a minimum of 8,400 "standard carton packages" (a term defined therein) at a price set forth in the Appendix to the Agreement.  Royal also has the right under the Agreement to purchase additional quantities (i.e., above the minimum) of Ruskova, subject to availability.

9.    AnSon is restricted by Section 2.2 of the Agreement from selling Ruskova products, directly or indirectly, to any other commercial party in the State of New York during the term of the Agreement.

10.    Section 6.2 of the Agreement provides, in relevant part, that "[i]n the event that [AnSon] terminates this Agreement, without cause, and there is no past or pending breach of the Agreement, [AnSon] shall pay to [Royal] a one-time fee equal to

Distributor's Gross Margin," with certain multipliers of that amount in year 4 of the Agreement and beyond. The Distributor's Gross Margin is defined in the Agreement as "the difference between the average net sales price of the Products [a term defined therein] sold by [Royal] for the twelve (12) month period immediately preceding the date of termination and less the cost of the Products during that same period."

11.    Within the first seven months of the Agreement term, from about May 2009 to November 2009, Royal purchased 8,400 "standard carton packages," satisfying its minimum purchase requirements for the entire three-year term. By July 2011, Royal had purchased nearly 20,000 "standard carton packages," more than twice the minimum requirement.

12.    In July 2011, Royal received a letter from AnSon, dated July 12, 2011 (the "AnSon Letter"), purporting to serve as formal notice of AnSon's termination of the Agreement, effective thirty (30) days from the date of the letter.

13.    On July 27, 2011, Royal sent AnSon a purchase order for 100 cases of Ruskova (the "July P.O."). AnSon refused to honor the July P.O.

14.    Upon information and belief, AnSon has made arrangements with another distributor, Southern Wine & Spirits ("SWS"), to distribute Ruskova in the State of New York, in flagrant violation of its Agreement with Royal.

15.    Royal was at all times in compliance with its obligations pursuant to the terms and provisions of the Agreement.

4

## FIRST CAUSE OF ACTION

### Breach Of Contract

16.     Plaintiff repeats and realleges each and every allegation contained in Paragraphs "1" through "15" of this Complaint as if fully set forth herein.

17.     Section 6.2 of the Agreement provides, in relevant part, that "[i]n the event that [AnSon] terminates this Agreement, without cause, and there is no past or pending breach of the Agreement, [AnSon] shall pay to [Royal] a one-time fee equal to Distributor's Gross Margin." The Distributor's Gross Margin is defined in the Agreement as "the difference between the average net sales price of the Products sold by [Royal] for the twelve (12) month period immediately preceding the date of termination and less the cost of the Products during that same period."

18.     AnSon purports to have terminated the Agreement as of August 11, 2011. Such termination is wholly without cause, and there has been no breach by Royal, which has more than fulfilled its obligations under the Agreement. For the twelve (12) month period immediately preceding August 11, 2011, the Distributor's Gross Margin is $313,825.31.

19.     As a direct and proximate result of AnSon's breach, Royal is entitled to damages in the amount of $313,825.31.

## SECOND CAUSE OF ACTION

### Breach of Implied Covenant of
### Good Faith and Fair Dealing

20.     Plaintiff repeats and realleges each and every allegation contained

5

in Paragraphs "1" through "19" of this Complaint as if fully set forth herein.

21.    AnSon has acted in bad faith by terminating the Agreement without cause and taking its business to a competing distributor without any regard for its obligations under the Agreement.

22.    As a direct and proximate result of defendant's wrongful conduct, plaintiff has suffered and will continue to suffer substantial damages in an amount to be determined at trial, but in no event less than $100,000.00, plus applicable pre- and post-judgment interest and costs, including reasonable attorney's fees.

### THIRD CAUSE OF ACTION

### Breach of Contract

23.    Plaintiff repeats and realleges each and every allegation contained in Paragraphs "1" through "22" of this Complaint as if fully set forth herein.

24.    Royal has issued invoices to AnSon for charges relating to promotions, tastings and price support, in the amount of $5,588.88. AnSon has failed to pay those invoices.

25.    AnSon has issued credits to Royal, which have not been used by Royal, in the amount of $4,845.81.

26.    As a direct and proximate result of AnSon's breach, Royal is entitled to damages in the amount of $10,434.69.

### JURY DEMAND

27.    Plaintiff respectfully requests a trial by jury on all issues.

WHEREFORE, plaintiff Royal Wine Corporation respectfully requests that this Court enter judgment against defendant AnSon Imports Ltd. Co. as follows:

a. on the First Cause of Action, contractual damages in the amount of $313,825.31, together with all recoverable costs and interest thereon;

b. on the Second Cause of Action, in an amount to be determined at trial, but believed to be in excess of $100,000.00 in compensatory damages, together with all recoverable costs and interest thereon, including reasonable attorney's fees;

c. on the Third Cause of Action, contractual damages in the amount of $10,434.69, together with all recoverable costs and interest thereon;

d. all together with the costs and disbursements of this action, including reasonable attorney's fees; and

e. such other and further relief as this Court may deem just and proper.

Dated: New York, New York
      September 28, 2011

Respectfully submitted,

SNITOW KANFER HOLTZER
& MILLUS, LLP

By: _____
Elliot J. Kosner (ER-6281)

575 Lexington Avenue, 14th Floor
New York, New York 10022-6102
(212) 317-8500
*Attorneys for Plaintiff*

7

# EXHIBIT A

## DISTRIBUTOR AGREEMENT

This Distributor Agreement is made and entered into as of the 1st day of May, 2009 by and between AnSon Imports, Ltd., 16711 Collins Avenue, North Miami Beach, Florida (hereinafter the "Supplier") and Royal Wine Corporation (RWC), a company incorporated in the State of New York, Corporate Office Address: 63 Lefante Way, Bayonne, New Jersey 07002, USA (hereinafter the "Distributor").

Whereas:                The Supplier is engaged in the business of supplying Distilled Spirit products under the following brand names:

> (1) Ruskova Genuine Russian Vodka
> (2) And such products as may be added to the portfolio of the Supplier from time to time.

And Whereas:            The Supplier wishes to market its products in the Territory.

And Whereas:            The Distributor represents to the Supplier that they have extensive marketing and distribution capabilities and experience in the Territory, as hereinafter stated.

Now, therefore, the Parties hereto have agreed as follows:

1. In this Agreement the following words and expressions shall have the following meanings:

   1.1 "Products" means the products listed on Appendix A, as amended from time to time.

   1.2 "Territory" means the State of New York.

   1.3 "Term" means shall mean the initial term, as well as any subsequent terms, of this Agreement as set out in Paragraph 2.

2. **General Scope of This Agreement**

   2.1 Minimum Purchase Requirement

   The Distributor agrees that it shall purchase from Supplier a minimum volume of Products as described herein:

   **Initial Term Period   5/1/09 to 4/30/12:** The Distributor will order for purchase from the Supplier during the initial three (3) year term of this agreement, a minimum of 8,400 standard carton packages (*) of Supplier's Product(s) .

   Provided that Distributor is not in default of this Agreement and neither party has notified the other party of its intent not to renew this Agreement at least 120 days prior to the end of the initial Term, this Agreement shall automatically extend for an additional three (3) year term.

1

(*) Standard Carton Package is defined as a total of twelve (12) bottles Equaling to the following:

| | | | | |
|---|---|---|---|---|
| (a) 750ml - | 12 Bottles | - | 9 | Liters |
| (b) 1 Liter - | 12 Bottles | - | 12 | Liters |
| (c) 1.75 L - | 6 Bottles | - | 10.5 | Liters |
| (d) 375ml - | 12 Bottles | - | 4.5 | Litters |
| (e) 200 ml - | 12 Bottles | - | 2.4 | Liters |
| (f) 50ml - | 120 Bottles | - | 6 | Liters |

2.2 The cost per case is as per Appendix A attached hereto and is limited to the first year 12 month period term of this agreement.

The Supplier agrees that, at its option, it will only increase the product prices twice a year giving the Distributor no less then three (3) months notice prior to each price increase. Each such price increase shall be no greater than 2.5% accumulative.

2.2 The parties hereto agree that the Supplier will not, directly or indirectly, sell any Products to any other commercial party in the Territory during term of this Agreement.

2.3 This Agreement and its scope described in Paragraph 2.1 above do not exclude the right to purchase additional quantities of Products from the Supplier at prices listed in Appendix A, subject to availability.

## 3.    Prices and Payment Terms

3.1    Distributor will have the option of ordering products either FOB New Jersey warehouse or FOB Russia. Warehouse locations may be changed from time to time by the Supplier. Supplier agrees to notify Distributor of any changes and/or additions to warehouse locations of inventory.

3.2    If purchase is made FOB New Jersey then pricing will be as indicated on Appendix A under column labeled 'N.J Warehouse Pricing' and terms will be next 30 days with a 15 day grace period.

3.3    If purchase is made FOB Russia then pricing will be as indicated on Appendix A under column labeled 'FOB Russia Pricing' and terms will be 90 days Bill of lading.

## 4.    Supplier's Responsibilities

4.1    The Supplier undertakes that all Products sold to the Supplier meet the legal ingredient and content requirements and that they are saleable in the Territory.

4.2    The Supplier will package all Products sold to the Supplier in accordance with all laws and regulations in the specified Territory.

2

4.3    The Supplier will package cases properly for shipment.

4.4    The Supplier will assure that all pricing, in accordance with Appendix A, are the most favorable prices available for the same Products within the open states within the United States.

4.5    Supplier will have printed on the outside of each case carton (length and width) a SCC bar code.

## 5.    Distributor's Responsibilities

5.1 Distributor shall use its best efforts to promote, sell and distribute the Suppliers Products and develop the market for the Products throughout the Assigned Territory.    However, it is understood that if Distributor purchases quantities that are within 85% of annual cases then agreement remain in effect and not be deemed in default.

5.2 Distributor will leave in position and not cover, alter, remove or erase any trademarks, notices or other marks (including and without limitation notices that a trademark design or copyright relating to the Products is owned by the Supplier or a third party) which the Supplier may place on or affix to the Products and/or its packaging.

5.3 The Distributor shall insure that they will conform to all legislation, rules, regulations and statutory requirements existing and /or as may be amendment in the future having jurisdiction of the suppliers Spirit Products within the assigned Territory

5.4 Distributor acknowledges that it has no rights to any trademarks, copyrights or other intellectual property belonging to supplier.

5.5 Distributor acknowledges that they are a qualified and licensed distributor in the territory and that they have the right to distribute and sell distilled spirits under their License #1011690

## 6  Term of the Agreement; Termination

6.1 This Agreement shall commence effective May 1, 2009 and shall continue in full force and effect through to April 30, 2012.  This Agreement may be terminated in the event that:

6.1.1    either party breaches any provision of this Agreement and such breach remains uncured at the expiration of thirty (30) days from the date of after written notice of such breach;

6.1.2    either party, through failure to renew or because of suspension, cancellation, or revocation, continuing for a period of fifteen (15) days or more, has suffered the loss of any federal, state, or local license required by law and necessary to carrying out the provisions of this Agreement;

3

6.1.3   the parties mutually consent in writing to termine the Agreement;

6.1.4   either Party has filed a voluntary petition in bankruptcy or arrangement under the Federal Bankruptcy Act or voluntary proceedings under state laws for the settlement or extension of payment of obligation to general creditors or an involuntary petition in bankruptcy has been filed and such involuntary petition has not been dismissed within ten (10) days;

6.1.5   of any transfer, sale, pledge, or other disposition of the majority of the outstanding capital stock of the Distributor shall occur, or if the power to vote the majority of the outstanding capital stock or ownership of Distributor be changed, (hereinafter referred to as "Conveyance") then Distributor shall notify Supplier in writing and Supplier shall have the right, at its option, to treat any such Conveyance, etc., as an assignment of this Contract and be subject to all the restrictions herein contained. In the event, of any such proposed Conveyance of Distributor's rights hereunder, Distributor agrees to notify Supplier in writing of any such intended pre-conveyance. The Supplier shall within thirty (30) days either approve (or) disapprove such conveyance at Supplier's sole and absolute discretion.  In the event Distributor fails to timely notify Supplier of the Conveyance, Distributor agrees to pay to Supplier, upon demand, Supplier's reasonable costs for attorney's and other third party fees incurred by Supplier for review of the documentation submitted or required for the proposed transfer, regardless of whether or not such proposed transfer is approved or denied by Supplier.

6.2 In the event that Supplier terminates this Agreement, without cause, and there is no past or pending breach of the Agreement, Supplier shall pay to Distributor a one-time fee equal to the Distributor's Gross Margin , as defined herein, multiplied by (a) twenty-four (24) during years 4, 5, or 6 of this Agreement; and (b) twelve (12) during years 7 and beyond (the "Termination Fee") provided that in either case the term of this Agreement has been extended by mutual agreement of the parties.   The Termination Fee shall be payable in equal, monthly installments commencing thirty (30) days from the date of termination. Notwithstanding the foregoing, neither party shall be obligated to renew this Agreement beyond the initial three year term.  For purposes of this Agreement, "Distributor's Gross Margin" shall mean the difference between the average net sale price of the Products sold by Distributor for the twelve (12) month period immediately preceding the date of termination and less the cost of the Products during that same period; such calculation shall be made by the CFO of the Distributor and verified by a certified public accountant selected by Supplier in the form of a written report and such report shall be made in accordance with GAAP.  Distributor shall supply all financial records (including back-up) to the CPA selected by Supplier.

## 7. Assignment

4

This Contract Agreement is not assignable by the Distributor in whole or in part without the express written permission and approval of the Supplier which Supplier shall not be obligated to give.

5

## 8    Governing Law

This Agreement shall be governed and interpreted under the laws of the State of New Jersey, without regard to principals of conflicts of law. The Parties agree that any action arising out of or relating to this Agreement, including any enforcement proceedings, shall be brought exclusively in the United States District Court for the District of New Jersey. The Parties adopt the principal that disputes should be regarded as business problems to be resolved promptly through business-oriented negotiations before resorting to litigation. The parties shall therefore first use their good faith efforts to resolve any dispute promptly by negotiation between their respective chief executive officers prior to resorting to litigation hereunder. Each party expressly waives any objections to the jurisdiction of the relevant Court over that party.

## 9    Notices

All notices hereunder shall be sent by overnight mail, return receipt requested (a) if to Distributor to:  Sheldon L. Ginsberg, Royal Wine Corp., 63 Lefante Way, Bayonne, NJ  07002, or by email to Sginsberg@royalwine.com; and (b) if to Supplier to:  Oleg Lazanovitch, AnSon Imports, Ltd., 16711 Collins Avenue, North Miami Beach, Florida or by email oleg@ruskova.com.

This agreement contains the entire agreement and understanding of the parties and no amendment or modification shall be effective without the signed written consent of the party charged therewith.

This agreement being authored by all Parties constituting the entire understanding between the Parties and supersedes all previous understanding, agreements, communication and representations, whether written or oral, concerning the treatment of information to which this Agreement relates and as indicated by the Parties signatures below.

Each company has the authority to enter into this Agreement.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their respective authorized representatives.

**Royal Wine Corporation (RWC)**
By:  David Herzog, President
Date: _____

**AnSon Imports, Ltd.**
By:  Oleg Lazanovitch, General Manager
Date:    05/06/09

6

<u>Appendix A</u>

**PRICING FOR INITIAL ONE YEAR TERM OF AGREEMENT**

1. Ruskova Genuine Russian Vodka

East Coast Warehouse:

202 Port Jersey Blvd
Jersey City, New Jersey 07305
Tel: (908) 351-2800

|  | FOB Russia Pricing: (per case price) | NJ Warehouse Pricing (per case pricing) |
|---|---|---|
| 1.75L | $23.25 | $58.00 |
| 1L | $25.00 | $64.00 |
| 750ML | $22.75 | $54.00 |
| 375ML | $13.50 | $33.00 |
| 200ML | $9.00 | $22.50 |
| 50ML | $30.00 | $54.00 |

7

